STATE OF NORTH CAROLINA v. ARTHUR S. GATLING AND CLARENCE B. BANKS

No. 694SC161

(Filed 13 August 1969)

**1. Robbery § 4— common-law robbery — sufficiency of evidence**

Issue of defendant's guilt of common-law robbery was properly submitted to the jury where State's evidence tended to show that defendants picked up the victim, a hitchhiker, and drove him to a secluded spot, that the hitchhiker "felt something was wrong" and hid his wallet containing $105 under the passenger side of the front seat, that the victim showed defendants the change he had in his pocket and that one of defendants took the money from him, that when the car was stopped defendants passed a straight razor back and forth and began asking the victim questions, and that one of the defendants then took the victim's watch.

**2. Robbery § 1— common-law robbery defined**

Robbery is the taking of money or goods with felonious intent from the person of another, or in his presence, against his will, by violence or putting him in fear.

**3. Robbery § 1— element of force**

The element of force involved in the offense of robbery may be actual or constructive.

**4. Robbery § 1— degree or extent of force**
The degree of force is immaterial so long as it is sufficient to compel the victim to part with his property or property in his presence.

**5. Criminal Law § 42— crime-connected article — watch — competency**
Where robbery victim identified a watch as the one that defendants took from him, the State is entitled to introduce the watch in evidence, and the fact that the watch was found in a deputy sheriff's car some 48 hours after defendants were in the car does not affect the competency of the evidence but only its credibility.

**6. Criminal Law § 103— credibility of evidence — jury question**
Credibility of the evidence is a matter for the jury.

**7. Criminal Law § 66— in-court identification of defendants — prompt identification in police station**
Decision of *U. S. v. Wade*, 388 U.S. 218, relating to police identification lineup, does not render inadmissible robbery victim's prompt identification of the accused, who were unrepresented by counsel, as they entered the police station accompanied by officers.

**8. Robbery § 5— common-law robbery — instructions — felonious intent**
In prosecution for common-law robbery, charge of the court, when considered as a whole, was sufficient to instruct the jury on the element of felonious intent.

APPEAL by defendants from *Burgwyn, J.*, at the 2 December 1968 Criminal Session, Superior Court of ONSLOW.

The defendants were charged in a bill of indictment, proper in form, with the felony of common law robbery on 24 October 1968 of money and a watch from the person of one Milton J. Russell, Jr. Upon pleas of not guilty defendants were tried by a jury which returned a verdict of guilty as charged to each defendant. From a judgment imposing a sentence of imprisonment defendants appealed.

*Attorney General Robert Morgan by Assistant Attorney General George A. Goodwyn for the State.*

*John H. Harmon for defendant appellant.*

MORRIS, J.

**[1]** The evidence, taken in the light most favorable to the State, tends to show that on 24 October 1968 Milton J. Russell, Jr., left Morehead City, North Carolina, hitchhiking to Jacksonville, North Carolina. The defendants picked Russell up near the main gate of the Camp Lejeune Marine Base at approximately 3:30 p.m. and

took him to Highway 17. From this point Russell walked to Cars Incorporated and placed a down payment on an automobile. The car dealer then took Russell to a standing station near the main gate of Camp Lejeune. Russell was hitchhiking back to Morehead City when the defendants picked him up the second time. However, instead of proceeding toward Morehead City, the defendants turned off on another highway. Russell asked the defendants to let him out of the car and they replied that they would let him out in a minute. Russell stated that he felt something was wrong and, therefore, placed his wallet, which contained $105, under the passenger side of the front seat. Russell stated, "When they stopped at the Stop sign, I said, 'You can let me out here. It will be O.K.,' and they turned again. I told them that if they ware trying to scare me, they were doing it and I had to get back to my ship, . . ." Russell showed the defendants his change and told them that was all the money he had. One of the defendants took the money from him. Defendants continued with Russell in the car. They went on a back road between an old building and some high weeds. When the car was stopped, the defendants took out a straight razor and began passing it back and forth and asking Russell questions. Gatling took Russell's watch. Russell stated that the defendants did not hold the razor up to him, but they held it where it could be seen at all times. After taking the watch the defendants hit him in the face and side. Gatling told him to get out of the car. Russell stated that he got out of the car and ran. Gatling chased him for a short distance before returning to the car. Defendants were later apprehended at the Van Nessa Club in Jacksonville. Russell's wallet was found under the front seat of their car.

[2]    Defendants argue that their motion for judgment as of non-suit and motion to set aside the verdict as being against the weight of the evidence should have been allowed because the evidence shows that Russell voluntarily gave the money and watch to the defendants. "Robbery is the taking of money or goods with felonious intent from the person of another, or in his presence, against his will, by violence or putting him in fear." 6 Strong, N.C. Index 2d, Robbery, § 1, p. 678.

[3, 4]    The element of force involved in the offense of robbery may be actual or constructive. Constructive force includes "all demonstrations of force, menaces, and other means by which the person robbed is put in fear sufficient to suspend the free exercise of his will or prevent resistance to the taking . . . No matter how slight the cause creating the fear may be or by what other circumstances the taking may be accomplished, if the transaction is at-

tended with such circumstances of terror, such threatening by word or gesture, as in common experience are likely to create an apprehension of danger and induce a man to part with his property for the sake of his person, the victim is put in fear." *State v. Sawyer,* 224 N.C. 61, 29 S.E. 2d 34. "The degree of force is immaterial so long as it is sufficient to compel the victim to part with his property or property in his presence, and the element of force may be actual or constructive." *State v. Sipes,* 233 N.C. 633, 65 S.E. 2d 127. We think that the evidence tested by these principles was sufficient to support a verdict on the offense charged. The defendants' motions were properly overruled.

[5, 6] Defendants argue that the watch belonging to the prosecuting witness should not have been introduced into evidence because it was found in the deputy's car some 48 hours after they had been in the car. The prosecuting witness testified that a watch was taken from him by the defendants. He identified the watch in court as being the one that was taken from him. Clearly, the watch was competent evidence. It served to better explain the evidence to the jury. *State v. Rogers,* 233 N.C. 390, 64 S.E. 2d 572. The fact that the watch was found in the deputy's car some 48 hours after the defendants were in the car affected credibility, but not competence. Credibility of the evidence is a matter for the jury. Stansbury, N.C. Evidence 2d, § 8.

[7] Defendants' next assignment of error relates to certain testimony concerning identification of the defendants by the prosecuting witness in the police station prior to the trial of this case.

The evidence disclosed that Russell was picked up by a "State Police car" and that he and the patrolman rode around looking for the car driven by the two who had robbed him. About 8:30 the patrolman got a call. Russell was taken to the "police station" where he remained until the officers brought the two men in. When they came in the room Russell promptly identified them as the two men who had robbed him. No questions were asked the two by him or by any officer prior to his identification of them. About three or four hours had elapsed from the time Russell had last seen them and when they came into the station. They were dressed the same as when he last saw them. Russell was certain of his identification. He saw them as they were being brought in.

Counsel for defendants argued, in the absence of the jury, that defendants were entitled to counsel before being placed in a lineup and that the law requires that several people of similar build and size be placed with the suspects before they can be exhibited for

identification purposes. Defendants insist in argument here that the pretrial identification was violative of defendants' Sixth Amendment right to counsel because counsel was not present when they were subjected to a lineup identification, on the authority of *U. S. v. Wade,* 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926; *Gilbert v. California,* 388 U.S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951; and *Stovall v. Denno,* 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967. All of these cases were argued the same day and decided the same day.

Both *Wade* and *Gilbert* involved lineups held at substantial intervals after arrest. Counsel had been appointed but was not present. In each instance, the United States Supreme Court said that a lineup was a critical stage in the criminal proceedings at which the accuseds were constitutionally entitled to have counsel present unless intelligently waived.

*Stovall* was a federal habeas corpus attack upon a state court conviction. Defendant, a Negro, was arrested within a day after a very brutal assault committed during the course of a robbery. The next day he was taken to the hospital room of the victim who was in critical condition. He was manacled to a white police officer, accompanied by several other officers and prosecutors. He was the only Negro in the room and not represented by counsel. The victim was asked if he "was the man", and she identified him. *Wade* and *Gilbert* were not applicable because they were given only prospective effect.

We are not here concerned with a lineup as in *Wade* and *Gilbert.* We are concerned with a confrontation or presentation of the suspect alone to the witness as in *Stovall.* Some of the language in *Wade* at least implies that a suspect has the right to counsel at any pretrial confrontation arranged by officers, regardless of the circumstances. The Court said in *Wade* that "the confrontation compelled by the State between the accused and the victim or witnesses to a crime to elicit identification evidence is peculiarly riddled with innumerable dangers and variable factors which might seriously, even crucially, derogate from a fair trial.", and "The pretrial confrontation for purpose of identification may take the form of a lineup, also known as an 'identification parade' or 'showup,' as in the present case, or presentation of the suspect alone to the witness, as in *Stovall v. Denno,* 388 US 293, 18 L ed 2d 1199, 87 S Ct 1967, supra. It is obvious that risks of suggestion attend either form of confrontation and increase the dangers inhering in eyewitness identification."

In *Stovall,* decided the same day as *Wade,* but to which the *Wade* rule could not be applied, the Court declared that the confrontation there before the Court "was so unnecessarily suggestive and conducive to irreparable mistaken identification that (defendant) was denied due process of law". The Court held that "a claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it."

The *Stovall* test has been applied by the Supreme Court in two subsequent cases. *Simmons v. U. S.,* 390 U.S. 377, 19 L. Ed. 2d 1247, 88 S. Ct. 967, and *Biggers v. Tennessee,* 390 U.S. 404, 19 L. Ed. 2d 1267, 88 S. Ct. 979, reh. den. 390 U.S. 1037, 20 L. Ed. 2d 298, 88 S. Ct. 1401, (see dissenting opinion), both of which were cases in which the identification complained of was prior to *Wade* and *Gilbert,* and the Court sought to determine whether the confrontation was "so unnecessarily suggestive and conducive to irreparable mistaken identification" that due process was denied, this determination to be made by evaluating the identification "in light of the totality of surrounding circumstances".

The confrontation now before us, however, is a post-*Wade* confrontation. We find no case involving a post-*Wade* confrontation in which the *Stovall* test has been held to be the governing criteria. The question before us is whether the *Wade* rule is applicable here.

A similar problem was before the United States Court of Appeals for the District of Columbia Circuit in *Russell v. U. S.,* 408 F. 2d 1280. The opinion, written by Chief Judge Bazelon, was handed down 24 January 1969. The United States Supreme Court denied certiorari on 26 May 1969. 23 L. Ed. 2d 245. There the facts were these: On 28 June 1967, at daybreak, George McCann heard the sounds of a blaring radio and breaking glass at the Community Shoe Shine Shop. On investigation, he saw the radio sitting on the sidewalk outside the broken shop window. He stationed himself in a brightly lighted gas station across the street, and then saw a man emerge from the shop, look across at him and proceed past him up the street. McCann went immediately to a nearby police station and reported the incident. This was within three or four minutes. A radio lookout was broadcast, and officers in a squad car promptly saw Russell in the vicinity. He matched the description given and fled from the police car. Therefore, the officers pursued him and caught up with him on the porch of a house. He had a radio in one hand, a hatful of cigarettes and small change concealed under his coat, and a coathanger and screwdriver in his pocket. He was also wearing gloves. The officers arrested him and took him back to the shop

where McCann identified him as the man he had seen coming out of the shop. The Circuit Court concluded that *Wade* did not require exclusion of McCann's identification resting the holding on a general rule that it is not improper for the police immediately to return a freshly apprehended suspect to the scene of the crime for identification by one who has seen the culprit minutes before. The Court recognized that without doubt confrontations in which a single suspect is viewed in the custody of police can be highly suggestive.

> "Yet, on the other hand, recognition of a person or face would seem to be as much the product of a subjective mental image as of articulable, consciously remembered characteristics. A man may see clearly in his 'mind's eye' a face or a figure which he is hard put to describe adequately in words. Though the image of an 'unforgettable face' may occasionally linger without any translation into words, photographic recall is most often ephemeral. Vivid in the flash of direct observation, it fades rapidly with time. And the conscious attempt to separate the ensemble impression into particular verbalized features, in order to preserve some recollection, may well distort the original accurate image so that it is the verbalized characteristics which are remembered and not the face or the man.

> Balancing all the doubts left by the mysteries of human perception and recognition, it appears that prompt confrontations in circumstances like those of this case will 'if anything promote fairness, by assuring reliability. . . .' This probability, together with the desirability of expeditious release of innocent suspects, presents 'substantial countervailing policy considerations' which we are reluctant to assume the Supreme Court would reject."

We agree with the reasoning of the Court in *Russell*. As previously noted, some *language* in *Wade* can be construed as encompassing prompt on-the-scene identifications. However, confrontations in this category do not fall within the *holdings* of *Wade* and *Gilbert*. The Court was obviously directing the holdings to the routine police lineup procedures to obtain evidence for trial. In these situations, where counsel had been retained and time was not a factor, the Court said it could find "no substantial countervailing policy considerations . . . against the requirement of the presence of counsel."

In the confrontations falling within the prompt on-the-scene identification category, there are substantial countervailing policy considerations as pointed out by Chief Judge Bazelon in *Russell*.

Prompt identification by one who has had ample opportunity to observe the culprit just a short time before aids the officers immeasurably in their investigation. If the suspect presented to the eyewitness is not the culprit, his release can be immediate and the officers are free to continue their search while clues are fresh and memory not impaired by the passage of time. Unquestionably identification under such circumstances would be more reliable than after the lapse of an interval of time.

Here the officers immediately returned the defendants whom they had just apprehended to the victim who identified them as he saw them coming in the door. We are not unaware of *Rivers v. U. S.*, 400 F. 2d 935 (5th Cir. 1968), but like the Court in *Russell*, we do not think that *Wade* requires the exclusion of this identification. See *State v. Bertha*, 4 N.C. App. 422, 167 S.E. 2d 33.

If this case were to be governed by the application of the principles of due process of law, certainly it could not be said that the confrontation "was so unnecessarily suggestive and conducive to irreparable mistaken identification" that defendants were denied due process of law.

[8] Defendants' remaining two assignments of error are to the charge of the court. They contend that the court, in one sentence of the charge, failed to include felonious intent as a prerequisite to a conviction and that the court also committed prejudicial and reversible error in commenting in his charge that by the sun four o'clock would be three o'clock ordinarily. However, a review of the entire charge reveals that the court amply instructed the jury that in order to convict the defendants the jury must not only be satisfied beyond a reasonable doubt that the defendants committed the robbery but that "at the time they did so they did it with the felonious intent to deprive the owner of his personal property, permanently, and convert it to their own use permanently; or always . . ." He further instructed that felonious intent is an essential element of the offense and "you must find, as I have said before, that it was done with the felonious intent before you may convict these defendants and you must be satisfied beyond a reasonable doubt . . ."

In his comment upon the time, the court had in response to request of defendants' counsel explained the testimony of a marine sergeant as to the time. The evidence with respect to the time of the occurrence was clear. The time terminology in use at the Marine Base is familiar to the people living in the area. We do not perceive any prejudice to defendants resulting from these alleged errors in

the charge, nor have defendants shown any prejudice. When the charge is construed contextually and considered as a whole, we find no prejudicial error. *State v. Hall*, 267 N.C. 90, 147 S.E. 2d 548.
Affirmed.

MALLARD, C.J., and CAMPBELL, J., concur.