State v. Murphy

On the plaintiff's appeal—New trial.

Judges PARKER and GRAHAM concur.

---

STATE OF NORTH CAROLINA v. THOMAS JAMES MURPHY

No. 707SC496

(Filed 16 December 1970)

1. **Habeas Corpus § 2— legality of restraint — defendant under indictment**

    An indictment returned by a grand jury is sufficient ground to detain a defendant for trial, and the defendant is not entitled to his release in a *habeas corpus* proceeding.

2. **Habeas Corpus § 4— extent of appellate review**

    An appeal is not allowed as a matter of right from a judgment entered in a *habeas corpus* proceeding, except in cases involving the custody of minor children.

3. **Constitutional Law § 30— right to speedy trial — reasonableness of delay**

    A defendant who was arrested in March 1969 and tried in January 1970 was not denied his right to a speedy trial, where (1) part of the delay was attributable to defendant's failure to cooperate with the first two of his court-appointed counsel, (2) all of the continuances in the case except one were for defendant's benefit, and (3) defendant did not show that he was prejudiced by any delay in the trial.

4. **Criminal Law § 91— continuances — discretion of court**

    Motions for continuance are ordinarily addressed to the discretion of the trial court.

5. **Habeas Corpus § 4— denial of defendant's request for transcript of habeas corpus proceeding**

    Refusal by superior court judge to order that the defendant be supplied with a transcript of the *habeas corpus* proceeding heard by the judge, the judge stating that the defendant's criminal cases could be tried prior to any disposition of the *habeas corpus* proceeding in the appellate courts, was not prejudicial to defendant, especially where the transcript was subsequently made available to the defendant.

6. **Criminal Law § 66; Constitutional Law § 32— identification of defendant — right to counsel**

    Where there is an in-custody identification of defendant at a line-up, or a presentation of defendant alone to a witness, the defendant has the constitutional right to have counsel present, and when counsel is not present, absent a waiver, testimony of the identification of a defendant is inadmissible and renders inadmissible any in-court identi-

fication unless it is first determined on a *voir dire* that the in-court identification is of independent origin and is untainted by the illegal lineup or other in-custody confrontation.

7. **Criminal Law § 66— in-court identification of defendant — finding that the identification was of independent origin**

In a prosecution charging defendant with armed robbery and with felonious assault, the trial court properly found that the in-court identifications of the defendant were of independent origin and were untainted by a confrontation at the police station, where (1) there was evidence that the two State's witnesses had ample opportunity to observe defendant at the time the crimes were committed, (2) the defendant fitted the descriptions that the witnesses had given the officers, and (3) the confrontation at the police station did not occur under circumstances so unnecessarily suggestive as to be a denial of due process.

8. **Criminal Law § 42— articles connected with crime — briers and brier stem**

Trial court in an armed robbery prosecution properly admitted sheriff's testimony relating to briers taken from the leather coat worn by defendant at the time of arrest, and relating to a brier stem taken from the area where a deputy sheriff found the stolen money.

APPEAL by defendant from *Peel, Superior Court Judge,* 27 January 1970 Criminal Session of Superior Court held in NASH County.

On 28 October 1970 the defendant filed a motion, which we allow, to add to the record on appeal what purports to be a "Petition for Writ of *Habeas Corpus*" addressed "To the Honorable Judge Resident and or Presiding Judge of Nash General Court of Justice Superior Court Division."

Defendant was tried upon two bills of indictment, which were consolidated for trial. In one he was charged with the felony of armed robbery and in the other he was charged with felonious assault.

The evidence for the State tended to show that the defendant was in Spring Hope on the evening of 16 March 1969 at about 6:45 p.m. He entered a self-service store owned by Mack Marlow located at the intersection of Highways # 64 and #581. This business is known as the "Minit Shop." After purchasing three cans of V-8 juice, the defendant pointed a pistol at Phillip William Edwards (Edwards), an employee of Mack Marlow, and demanded all the money in the store. The store was well lighted. The defendant had on dark glasses. Edwards put the

money, consisting of about $20 in change and about $700 to $900 in bills (which was the property of Mack Marlow) in a brown paper bag and gave it to defendant. The defendant started out the door of the store and bumped shoulders with Charles W. James (James) who was coming into the store. After entering the store, Edwards told James of the robbery and James went to the door, hollered at the defendant, and the defendant ran. James got in his car and pursued him. As James got near the defendant, they were approaching the railroad track. The defendant ran into some brier bushes. James stopped with the lights on his car shining down the road. James heard him moving around in the bushes. After a car stopped, James talked to the occupants. It proceeded on and the defendant came out in front of James' car, without dark glasses on, and with a gun in his hand. At that time James was standing by his car, the car lights were on, and the door was open. The defendant walked within three feet of the headlights of the car, and the lights of the car were shining on him when he shot the pistol. The bullet struck the windshield. James started to get back in his car; whereupon, the defendant shot again. This time the bullet struck James in the left side about two inches from his heart and came out about two or three inches on the left side of his backbone. James was treated for his wounds by a doctor but was not hospitalized. James and Edwards described the appearance of the defendant to the police officers. At about 10:15 or 10:30 that same evening, Warren Green (Green), a deputy sheriff of Nash County, arrested the defendant on Highway #64 about one hundred yards East of the "Minit Shop." The defendant did not have on dark glasses but was wearing a black leather jacket which was later discovered to have briers in it similar to the briers in the bushes where the defendant had gone as James followed him from the store.

After he was arrested, the defendant was again seen by Edwards that night at the jail about 11:30 p.m., and Edwards at that time identified the defendant as the man who robbed him. The defendant was also seen by James that night at the jail between 11:00 and 11:30, and James at that time identified the defendant as the man who had shot him. At about 12:00 that night, Officer Green went to the area which James had described as the place where defendant went into the bushes. After a search of this area that night, he found two paper bags, $318.00 in paper money, three cans of V-8 juice, and a

pair of sunglasses. The next morning Green went back to the same area and found about $17 in silver scattered over an area of three or four feet. About two months after this, Benny Lee Matthews found a .32 caliber pistol "in a yard next to the railroad property" and gave it to Green.

Defendant's evidence tended to show that he was not in Spring Hope between 6 and 8 o'clock on the evening in question. He did not rob Edwards and did not shoot James. On 16 March 1969 at about 5:15 or 5:30 p.m., he left Richmond, Virginia, on a bus on his way to Raleigh to seek employment. After arriving at Rocky Mount around 9:00 or 9:15 p.m., he learned he had missed the bus to Raleigh. He asked for directions on how to get to Raleigh "and was told to take Highway 64, West." He began hitchhiking and caught one ride to a point about one mile east of where he was arrested. After that he went "into town to the lighted area where I was arrested." There was a phone booth nearby. He called the operator and again asked for directions to Raleigh and "she told me to go West on Highway 64." He "thumbed" the car operated by Green, who arrested him. When arrested he had $193 in his pocket. One Hundred Forty Dollars of this was his money he had obtained from his mother that day. Forty Dollars of this was money paid to him on that day by his cousin.

The jury returned a verdict of guilty as charged in each of the bills of indictment.

From judgment of imprisonment, the defendant appealed to the Court of Appeals.

*Attorney General Morgan and Assistant Attorney General Vanore for the State.*

*Biggs, Meadows & Batts by M. Alexander Biggs for defendant appellant.*

MALLARD, Chief Judge.

The defendant's first assignment of error is based upon his exception to the signing and entry of an order by Judge Bundy on 26 November 1969.

[1]  On 3 November 1969 the defendant had filed what he called a petition for a writ of *habeas corpus*. This appears to have been prepared by the defendant without legal aid. In it the defendant asserts that certain of his constitutional rights

were violated and that he was illegally detained. The defendant had not been tried when this was filed, and he did not assert in the petition that the legality of his restraint had not been already adjudged upon a prior writ of *habeas corpus*. By failing to do this, he did not comply with the provisions of G.S. 17-7 relating to the contents of a petition for the writ of *habeas corpus*. Nevertheless, Judge Bundy heard the defendant and upon competent evidence, found that the defendant was being held for trial on two valid bills of indictment. An indictment returned by a grand jury is sufficient grounds to detain a defendant for trial. The judge properly declined to issue the writ and to release the defendant on the hearing of the petition for the issuance of the writ.

In the record, immediately after the judgment denying the defendant's demand that he be released, there appears an entry headed "Exception and Notice of Appeal." In the body of this instrument, the defendant excepted to the signing of the order and "gives notice of application to the North Carolina Court of Appeals for writ of *certiorari*." This "notice of application" is meaningless. No petition for writ of *certiorari* was ever applied for or issued by this court to review the ruling of Judge Bundy on the *habeas corpus*.

[2]  An appeal is not allowed as a matter of right from a judgment entered in a *habeas corpus* proceeding, except in cases involving the custody of minor children. *Surratt v. State*, 276 N.C. 725, 174 S.E. 2d 524 (1970).

The record on appeal from the trial was not docketed in this court within the time permitted by the rules. Subsequently, the Court of Appeals allowed defendant's petition for writ of *certiorari* to review the trial and the judgment imposed, but this does not extend to or authorize a review of the order entered prior to the trial denying the release of the defendant under *habeas corpus*.

[3, 4]  Defendant argues in his brief that he was denied a speedy trial, but this is not properly raised by this first assignment of error. The evidence for the State and the record in this case tended to show that defendant was arrested in March 1969. He was not tried until January 1970. During that time he remained in the Nash County Jail or at a State hospital for examination. In May 1969, when defendant's case first came up for trial, he did not have a lawyer. The defendant had

theretofore told the court officials that he had employed a lawyer in Virginia. The Virginia lawyer was not present in May 1969. The defendant then requested a lawyer be appointed for him. One was appointed and after that, the defendant had three different court-appointed attorneys. Apparently he could not or did not cooperate with the first two of them. The first two lawyers were permitted at different sessions of court to withdraw. During the time he was in custody, the defendant's case was brought up for trial several times, but he was not ready for trial and it was continued at his instance or for his benefit. The State appears to have been ready for trial each time except the one time on 26 November 1969 when one of the State's material witnesses was absent. Also, the defendant's counsel did not appear to be ready for trial during the first week of the two-week November session. The State, during the second week of the November session, moved for a continuance, and the defendant demanded that he be tried. The trial was continued until January 1970. Motions for continuances are ordinarily addressed to the discretion of the trial court. 2 Strong, N.C. Index 2d, Criminal Law, § 91, p. 620. No abuse of discretion or prejudicial error in granting the continuances is shown on this record.

Perhaps the reason that the defendant was not ready for trial can be gleaned from the testimony of the sheriff of Nash County who testified on the question of punishment after the defendant was found guilty, as follows:

"On the morning of the 17th Mr. Green brought him in to the jail up there and in the jailor's office Mr. Green handed me the black leather coat we had here in court. It had briers all up in the shoulder. I showed it to him and asked him about the briers and the boy was glassy-eyed, he didn't look right, he looked like he was under the influence of whiskey or dope or something. I didn't smell anything on him. I questioned him about what he had been taking and he told me he had been on heroin for about two years. He told me that he taken *(sic)* a fix after he left home and went uptown, he had a fix, he called it, and said you could get it anywhere uptown and told me of several different blocks he could get it. He said he ran up with those soldiers and had another fix on the bus later. Both of his arms showed signs of needles, both arms, and there was a needle found in his jail cell after he was taken out."

The rule is that "(a) person formally charged with crime is entitled to a speedy and impartial trial under both the federal and state constitutions, but such right is a shield to protect a defendant from arbitrary and oppressive delays, and whether a speedy trial is afforded must be determined in the light of the circumstances of each particular case." 2 Strong, N.C. Index 2d, Criminal Law, § 91, p. 619. See also *State v. Lowry* and *State v. Mallory*, 263 N.C. 536, 139 S.E. 2d 870 (1965), *appeal dismissed* and *cert. denied*, 382 U.S. 22, 15 L. Ed. 2d 16, 86 S.Ct. 227; and *State v. Patton*, 260 N.C. 359, 132 S.E. 2d 891 (1963), *cert. denied*, 376 U.S. 956, 11 L. Ed. 2d 974, 84 S.Ct. 977.

Under the circumstances of this case, we do not think that the defendant was denied the right to a speedy trial. All of the continuances except one were for his benefit. Moreover, he has not shown where he was prejudiced by any delay in the trial.

Defendant moved twice to dismiss the charges against him because of certain alleged violations of his constitutional rights. The question of the failure of the court to allow the motions to dismiss is not presented on this record by proper exception and assignment of error. However, we think the motions were properly overruled.

[5]  Defendant's second assignment of error is to the failure of Judge Bundy on 28 November 1969 to supply him with a transcript of the *habeas corpus* proceedings and motion to dismiss heard by him on 26 November 1969. This transcript has now been made available to the defendant since it appears in this record. In a letter to the court reporter, Judge Bundy gave as his reason for failing to sign an order for payment of a transcript thereof the following:

> "It is too near the next term of court to put the State to this expense, a two-weeks criminal term being scheduled beginning January 26.
>
> The cases can be tried before these appeals, or petitions for *certiorari* can be heard and I think it is a needless and useless expense at this time.
>
> The Judge presiding at the Spring Term may do as he may be advised, after the January Term."

No prejudicial error has been made to appear by the failure of Judge Bundy to order that the defendant be supplied a copy of this transcript. This assignment of error is overruled.

Defendant's third and fourth assignments of error will be discussed together. They both deal with the question of the in-court identification of the defendant. Assignment of error three relates to the ruling of the court on the admission of the testimony of Edwards as to his identification of the defendant at the Spring Hope Jail, when the defendant did not have an attorney present, and his identification of the defendant in court as being the person who robbed him. Assignment of error four relates to the ruling of the court on the admission of the testimony of James as to his identification of the defendant in court as being the person who shot him, after he had seen the defendant in the Spring Hope Jail.

After holding a *voir dire* as to the admissibility of the identification of defendant by Edwards in the Spring Hope Jail shortly after the crime, the trial judge, upon competent evidence, found the following facts:

"(1) That at the time of the confrontation in question the defendant was not represented by counsel and had not waived any of his constitutional rights.

(2) That the alleged robbery was in the Minit Shop in the presence of the witness Phillip Edwards over a period of ten to fifteen minutes, during which time he had two conversations with him, and that at the time of the robbery the robber was three or four feet away from him, and that when he put the gun on him he got a good look at him then; that the lights throughout the Minit Shop and at the police station were good; that the witness thought it unusual that a person would wear dark glasses at 7 o'clock p.m.; that the time and conditions present gave the witness ample time to observe the robber.

(3) That the witness at the time of the robbery gave in detail an accurate description of the robber; that in the opinion of the court the description as to the defendant's age and size and race is accurate at the present time.

(4) That approximately four and one-half hours elapsed between the time the witness saw the robber in the Minit Shop and when he identified the defendant at the police station.

(5) That no suggestion was made on the part of anyone at the time of the confrontation, or prior thereto, that

State v. Murphy

would tend to suggest in any manner to the witness that the defendant was the robber.

(6) That at the time of the confrontation there was no hesitancy or hesitation on the part of the witness and no doubt in his mind that the defendant was the man who committed the robbery at the Minit Shop.

(7) That the confrontation occurred during the investigatory period and shortly after the witness had seen one person of the Negro race who had been brought to the Minit Shop as a suspect and the witness had told the officer that this was not the man.

(8) That at the time the witness saw the defendant at the police station he was wearing clothes which answered the description previously made by the witness, although he was not wearing glasses or gloves.

(9) That the defendant had been arrested approximately three and one-half hours after the robbery and the defendant was within approximately 100 yards of the Minit Shop.

(10) That the identification by the witness Edwards of the defendant today in court is based on his observation of the defendant at the time of the robbery and is not based to any extent upon seeing the defendant in the confrontation at the police station."

After holding another *voir dire* as to the admissibility of the identification of the defendant by James in the Spring Hope Jail shortly after the crime, the trial judge, upon competent evidence, found the following facts:

"(1) That at the time of the confrontation at the police station the defendant was not represented by counsel and had not waived any of his constitutional rights;

(2) That the witness James had ample time to observe the person who shot at him over a period of some two to three minutes or some appreciable period of time, and although it was dark that this person was in the bright headlights of his automobile looking at him from a distance of about eight feet, and that at the police station at the place where the witness James confronted the defendant and made his identification that it was done in a well lighted room and not in a dark cell;

(3) That although the witness had been shot at the time he saw the officer he gave a description which proved to be substantially accurate as a description of the defendant;

(4) That the confrontation between the witness and the defendant at the police station occurred approximately four to four and one-half hours after the witness was shot; and

(5) That no suggestions were made in any fashion to the witness that the defendant was the person who had shot him;

(6) That the witness identified the defendant as soon as he saw him and without any hesitation;

(7) That the defendant at the time of the identification was wearing certain clothes which corresponded to the description given by the witness;

(8) That the defendant had been arrested approximately three and one-half hours after the witness was shot, in the same general vicinity;

(9) That the witness' in-court identification was based solely on his observation of the person who shot him, at and about the time of the shooting and during the time that he observed his assailant in the headlights of the automobile, and that his in-court identification was not based in any respect on the confrontation at the police station."

[6]   The rule is that where there is an in-custody identification at a lineup, or presentation of a defendant alone to a witness, the defendant has the constitutional right to have counsel present, and when counsel is not present, absent a waiver, testimony of the identification of a defendant is inadmissible and renders inadmissible any in-court identification unless it is first determined on a *voir dire* that the in-court identification is of independent origin and is untainted by the illegal lineup or other in-custody confrontation. *United States v. Wade,* 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S.Ct. 1926 (1967) ; *Gilbert v. California,* 388 U.S. 263, 18 L. Ed. 2d 1178, 87 S.Ct. 1951 (1967) ; *Stovall v. Denno,* 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S.Ct. 1967 (1967) ; *State v. McNeil,* 277 N.C. 162, 176 S.E. 2d 732 (1970) ; *State v. Blackwell,* 276 N.C. 714, 174 S.E. 2d 534 (1970) ; *State v. Rogers,* 275 N.C. 411, 168 S.E. 2d 345 (1969).

State v. Murphy

[7]  In this case the experienced trial judge found, upon competent evidence, that both in-court identifications were of independent origin and were untainted by the confrontation at the police station. Both identifications of the defendant at the jail occurred within four and one-half hours after the commission of the crime. Each of the witnesses had ample opportunity, as well as reason, to observe the defendant at the time of the commission of the crime. The defendant fitted the descriptions the witnesses had given the officers. When the totality of the circumstances is considered, we are of the opinion that the identification of the defendant at the jail by both witnesses did not occur under circumstances "so unnecessarily suggestive and conducive to irreparable mistaken identification" as to be a denial of due process. *State v. Gatling*, 275 N.C. 625, 170 S.E. 2d 593 (1969); *State v. Gatling*, 5 N.C. App. 536, 169 S.E. 2d 60 (1969); *State v. Bertha*, 4 N.C. App. 422, 167 S.E. 2d 33 (1969). We hold that the trial court did not commit error in admitting into evidence the identification of the defendant by the witnesses Edwards and James.

[8]  Defendant's last assignment of error is to the admission of the testimony of the sheriff of Nash County as to some briers he found in and took from the leather coat identified as the one taken from the defendant at the time of his arrest, and a certain brier stem he took from the area where Deputy Sheriff Green found the money. The defendant contends that the State's evidence fails to show that the briers were in the coat at the time the coat was taken from the defendant by Deputy Sheriff Green that night and received by the sheriff the next morning and that the coat may have inadvertently come into contact with the briers during the time that the deputy sheriff took the coat and the time he gave it to the sheriff.

The rule is stated in Stansbury, N. C. Evidence 2d, § 85, p. 192, as follows:

"Tangible traces of various sorts may indicate the presence of a person or the happening of an event of a certain character at a particular place, and evidence of them is therefore admissible if the inference sought to be drawn is a reasonable one."

Under the circumstances of this case, the trial judge correctly admitted the evidence concerning the briers.

The defendant has had a fair trial, free from prejudicial error.

No error.

Judges PARKER and GRAHAM concur.