443 P.2d 925

The STATE of Arizona, Appellee,

v.

Tommie L. BOENS, Appellant.

No. 2 CA–CR 116.

Court of Appeals of Arizona.

July 23, 1968.

Rehearing Denied Aug. 26, 1968.

Review Denied Oct. 8, 1968.

Gary K. Nelson, Atty. Gen., Darrell F. Smith, Former Atty. Gen., Carl Waag, Asst. Atty. Gen., for appellee.

Erik M. O'Dowd, Tucson, for appellant.

MOLLOY, Judge.

The only question raised in this appeal is whether the defendant's right to counsel was violated when the defendant was identified by the victim of an attempted robbery at times when the defendant was not provided counsel.

The identifications with which we are concerned occurred at the scene of the attempted robbery, approximately fifteen minutes after it occurred, and at a preliminary hearing conducted approximately one week thereafter. These events were, respectively, one day and one week after the Supreme Court of the United States rendered its trilogy establishing the right of an accused to counsel when brought before a witness by authorities for identification purposes. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (decided June 12, 1967); Gilbert v. State of California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (decided June 12, 1967); and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L. Ed.2d 1199 (decided June 12, 1967). It is our view that these decisions do not establish a right to counsel sufficiently broad to cover the fact situation here.

The attempted holdup in this case was reported to the police almost immediately after its occurrence and, on the basis of a radio description, the defendant was brought back, without delay, to the service station where the victim was working as a gas-station attendant. The defendant had been "requested" by police officers to accompany them to this place and the defendant did so without any objection or resistance. Upon arrival at the service station, approximately fifteen minutes after the incident in question, the attendant identified the defendant.

According to the testimony of the attendant, this person had first come to the service station at approximately 2 a. m., and had asked for change in order to use a pay phone. He was in the immediate vicinity of the service station for ten or fifteen minutes at that time and had a short conversation with the attendant about the reason for his phone call. This person left on foot and shortly before 3 a. m., returned to use the phone again. After using the telephone, the man approached the attendant to get change to use the "pop" machine and thereafter he again engaged the attendant in a short conversation which terminated with the man approaching close to the attendant and stating: " 'This is a holdup.' "

When the defendant was brought to the station by the police officers, the attendant was unable to identify him from a distance of several car lengths, but when he drew nearer to him he announced a positive identification. One of the bases for the identification, according to the attendant, was that the defendant had a pierced-ear type of earring in his left ear.

The defendant was not provided counsel at a preliminary hearing conducted one week later,[1] and, though the record before us does not establish it, we assume there

---

[1.] See State v. Armstrong, 103 Ariz. 174, 438 P.2d 411 (1968), holding that a defendant is not entitled to counsel at a preliminary hearing unless there is a showing of prejudice.

was an identification of the defendant by the service-station attendant at this hearing.

The *Wade, Gilbert* and *Stovall* decisions are all predicated upon the Sixth Amendment's guaranty that:

"In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence."

*Wade* and *Gilbert* were each concerned with a "lineup" conducted by police officials after arrest and indictment and fifteen days and sixteen days, respectively, after appointment of counsel for the accused. In neither case was the defendant's counsel notified of the lineup.

In *Stovall,* the accused was brought by police officials for identification in the hospital room of a woman who had been stabbed in the execution of the crime for which the accused had been arrested. The confrontation occurred approximately one day after the arrest of the defendant. Justice Brennan characterized the situation insofar as Stovall's access to counsel with these words:

"The police, without affording petitioner time to retain counsel, arranged with her [victim's] surgeon to permit them to bring petitioner to her hospital room * * *."

388 U.S. at 295, 87 S.Ct. at 1969.

While there is language in each of the opinions in this trilogy which may arguably apply to all pretrial identifications as to which law-enforcement officials play any part, we do not believe that it was the intent of the Supreme Court to categorize on-the-scene identifications, such as this one, as being at a critical stage in the "prosecution" of the accused.

Nor do we believe these lineup decisions pertain to an identification occurring at the time of a preliminary hearing when there has been a previous on-the-scene identification as positive as in the case at bar. The admissibility threshold is crossed, under the pronouncements of these "lineup" cases, when it is established that the in-court identification emanated from "an independent

origin" (388 U.S. at 242, 87 S.Ct. 1926), other than a "suspect pretrial identification" (388 U.S. 235, 87 S.Ct. 1926). We believe the "independent origin" of the identification here is beyond cavil. After a positive identification, obtained as close in time to the incidence of the crime as this, we do not believe it reasonable to assume that an identification occurring during a subsequent judicial proceedings a week later could have been the "origin" of identification occurring at the trial.

We rest our decision on the reasoning expressed above, but, in so doing, do not wish to be understood as taking the view that these decisions of the United States Supreme Court establish a right to counsel at an identification made at any time prior to the filing of formal charges. There is language in these decisions making it unclear as to what the intent of the Supreme Court is in this regard. In *Gilbert,* it is said in referring to the *Wade* decision:

"We there held that a *post-indictment pretrial lineup* at which the accused is exhibited to identifying witnesses is a critical stage of the criminal prosecution; that police conduct of such a lineup without notice to and in the absence of his counsel denies the accused his Sixth Amendment right to counsel and calls in question the admissibility at trial of the in-court identifications of the accused by witnesses who attended the lineup." (Emphasis ours) 388 U.S. at 272, 87 S.Ct. at 1956.

This interpretation of *Wade-Gilbert* is reinforced by a subsequent explanation of the rule:

"The rationale of those cases [the lineup decisions] was that an accused is entitled to counsel at any 'critical stage of the prosecution,' and *that a post-indictment lineup is such a 'critical stage.'*" (Emphasis ours) Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 970, 19 L.Ed.2d 1247 (1968).

In promulgating this far-reaching interpretation of our Constitution, one contrary

to the assumption held by "[t]he law enforcement officials of the Federal Government and of all 50 States" and one "not foreshadowed" by prior decisions of the Court (388 U.S. at 299, 87 S.Ct. at 1971), we must assume that the Court selects its language with care. Hence, we see no reason for including in these characterizations of the rule of *Wade* and *Gilbert*, the above-emphasized language unless the Supreme Court intended significance in so doing.

*Stovall* is not a post-indictment case, but, in this decision, the Supreme Court did not purport to establish a different rule of exclusion, but only to be applying the rule of "*Wade* and *Gilbert*" (388 U.S. at 296, 87 S.Ct. 1967). In *Stovall,* the Court held categorically that:

"* * * on the facts of this case petitioner was not deprived of due process of law in violation of the Fourteenth Amendment." 388 U.S. at 296, 87 S.Ct. at 1969.

The Sixth Amendment's guarantee of counsel is not applicable in state courts "as such." Bartkus v. People of State of Illinois, 359 U.S. 121, 124, 79 S.Ct. 676, 678, 3 L.Ed.2d 684, 687 (1959). To this time, this guarantee has been enforced upon the states only through the Fourteenth's "due process" and "equal protection of the laws" provisions. See Anders v. State of California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R.2d 733 (1963).

A due process foundation for whatever separate rule may be established by *Stovall* is ruled out by the opinion itself (see quote supra). Hence, if *Stovall* extends the rule of *Wade* and *Gilbert*, it must be on an equal protection basis.

The United States Supreme Court is particularly concerned that the well-to-do have no advantage over the indigent. See, e. g., Douglas v. State of California, 372 U.S. 353, 358, 83 S.Ct. 814, 817, 9 L.Ed.2d 811, 815 (1963), and Griffin v. People of State of Illinois, 351 U.S. 12, 19, 76 S.Ct. 585, 591, 100 L.Ed. 891, 899, 55 A.L.R.2d 1055, 1061

(1956). In a *Stovall* situation, a rich man may very well have been accompanied by counsel to the hospital room identification occurring more than a day after arrest. But, whether Boens were rich or poor, it is not probable that he would have been any better represented by counsel at this confrontation occurring in the middle of the night without any notice whatsoever.

If such confrontations as this violate our Constitution because they are "suggestive," then much of the evidentiary material which forms the grist of the fact-finding machinery in our courts should as well be constitutionally banned for unreliability. It is common practice for trial lawyers to conduct pretrial interviews of their clients in the absence of the opposing counsel. Occasionally, such procedure is frankly referred to as the "coaching" of one's witnesses. We conceive that such procedure is far more suggestive than the impromptu confrontation that occurred in the instant case.

That the view taken here may be in accord with the United States Supreme Court's interpretation of our Constitution is indicated by language contained in Simmons v. United States, supra, in which the Court refused to outlaw all extrajudicial, in-the-absence-of-counsel identifications by means of photographs:

"Despite the hazards of initial identification by photograph, this procedure has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and *of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them* through scrutiny of photographs. The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error." (Emphasis ours) 88 S.Ct. at 971.

This language has equal pertinency to the procedure followed here. The circum-

stances here seem at least equally "compelling" (88 S.Ct. at 971). It is our view that confrontations such as involved here, dictated ·by the exigencies of the immediate situation, serve a salutary purpose and that neither rich nor poor are entitled to suppress any evidence so obtained.

The division of the Court in *Wade-Gilbert-Stovall* [2] increases the difficulty of applying this new law to the multifarious fact situations arising in trial courts throughout this nation. We hazard the guess that millions of man-hours, and much of it futile, will be expended in the interpretation of this trilogy before the dust has settled. Insofar as this decision is concerned, we hold only that, under the particular circumstances here, this new doctrine did not apply to this on-the-scene identification nor to the sequential identification at the preliminary hearing.

Judgment affirmed.

KRUCKER, J., concurs.

HATHAWAY, Chief Judge (dissenting).

The in-court identification was defective and was curable only through a hearing to establish its origin. *Wade, Gilbert* and *Stovall,* supra. This court's conclusion, in absence of a proper hearing in the trial court, is founded on surmise and would, perhaps, not appear so reasonable were the product of such hearing available.

The conviction should be vacated and the cause should be remanded for a hearing to determine the origin of the in-court identification. If, at the hearing, it is determined that the identification was from an "independent source," the judgment should be reinstated; otherwise, it should be reversed.

**2.** In these three decisions, fifteen separate opinions are rendered *Wade* and *Gilbert,* as to right to counsel, are essentially 5–4 opinions (Brennan, Douglas, Fortas, Warren and Clark for majority; Black, White, Harlan and Stewart dissenting). *Stovall* is preoccupied with the retroactivity question and the vote on whether there was a constitutional violation is less than clear. On the question of whether there was a violation of due process, the vote appears to be 7–2 in the negative (Douglas and Fortas dissenting). Equal protection aspects are not separately discussed and the situation is complicated by the stare decisis approach of Black's dissenting opinion advocating that the rule of *Wade* should be given retroactive application.