Larry PERRYMAN, Appellant,

v.

The STATE of Texas, Appellee.

No. 43681.

Court of Criminal Appeals of Texas.

Sept. 16, 1971.

John W. Goode, Jr., San Antonio, for appellant.

Ted Butler, Dist. Atty., John L. Quinlan, III, and Sparta Bitsis, Asst. Dist. Attys., San Antonio, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ODOM, Judge.

This is an appeal from a conviction for the offense of robbery by assault. The punishment, enhanced under Article 62, Vernon's Ann.P.C., was assessed at life. The case was tried before the court, the appellant having waived his right to a jury.

The record reflects that Jose Flores, a sixty-eight year old man, had left a bar on Zarzamora Street in San Antonio; that he got into his pickup truck and was attempting to start the vehicle when he was pulled out by two men, one of whom held him while the other ripped open his hip pocket, took his billfold, and in company with the other man, fled down the street. He then went back to the bar and notified the police who arrived approximately ten minutes later. Soon thereafter, an officer who had received a radio report of the robbery observed two men two blocks from the scene "dividing some money." The men fit the description the officer had received, and he placed both of them under arrest. Luther Procter, appellant's companion, fled and was apprehended minutes later; he was then placed in a police car with Police Officer Thompson and driven to a car wash location on Zarzamora Street where he was identified by Flores as one of the men who had robbed him.[1] Soon thereafter appellant was identified at the police station by Flores.

Appellant alleges three grounds of error: (1) he contends evidence of the pre-trial identification should not have been admitted, as such occurred in the absence of counsel which had not been intelligently waived; (2) the court erred by permitting in-court identification based on the pre-trial identification; and (3) the pre-trial identification was grossly unfair to appellant.

The record reflects the following testimony by the arresting officer:

"Q.  All right.  Now, do you know of your own knowledge—First, was Mr. Perryman ever read his rights?

---

[1]. Flores also mistakenly identified Officer Thompson as being the other one who committed the robbery.

"A. Yes, sir. He was read his rights by Officer Menchaca.

"Q. In your presence?

"A. In my presence.

"Q. By his constitutional rights, what exactly do you mean?

"A. By his constitutional rights?

"Q. What was read to the man?

"A. The card that we are issued by the S.A.P.D.

"Q. Do you have that card with you?

"A. Sure.

"Q. No, just sit down. This is a normal card that police officers carry?

"A. Yes, sir.

"Q. And you heard this card read to Mr. Perryman there at the police station?

"A. No, this wasn't at the police station.

"Q. Oh, excuse me. Where was it read to him?

"A. By the car wash. That's where this was read to him."

The witness further testified, on re-direct examination:

"Q. And was Perryman still sitting in the car then?

"A. Now wait a minute. I think he was standing behind the car when he got out and then he read him the rights, right there on the side of the car wash, outside *outside* of the car, that's where it was.

"Q. On the side of the car?

"A. Yes, sir, right on the back.

"Q. Who was it that did that?

"A. Menchaca.

\* \* \* \* \* \*

"A. Well, after I decided to handle one thing at a time, he said, *'I know how that goes.'* And he said, 'I'll read it to you anyway.' (Emphasis supplied)

"Q. You waited until after he read it and left?

"A. I went back and got in the car."

The officer on duty at the police station when appellant was brought in testified:

"Q. (By the Court) Did you hear Mr. Perryman at any time before Mr. Flores identified him ask for a lawyer or to have a lawyer appointed for him?

"A. I asked the officers, the uniformed officer at the time if they had been advised of their rights and if they wanted to make a telephone call. Several times during this hour or hour and fifteen or twenty minutes that this took place, they were given the opportunities to use the telephone. I don't remember which one said, 'I don't have any use for a lawyer, I don't need one.' I don't remember which one it was but neither one wanted to use the phone.

"Q. Had they indicated they didn't want to use the phone?

"A. That's right, sir."

After an extensive hearing on the motion to suppress the in-court identification of appellant, the trial court stated:

"Gentlemen, the Court finds that there was a line-up which in truth and in fact it does not show that there was a line-up as we know it in Gilbert, Wade, and Martinez. The Court is going to find that there was an intelligent waiver of the Defendant of his attorney and to be—Therefore, the Court finds that there was no suggestions by anyone as to the

identity of the Defendant that the point of time was in the proximity as part of the res gestae, you might say of the arrest and part of the investigative procedure of this which only took, not more than an hour and a half and the Court finds that—The Court is going to deny the motion to suppress the evidence in this cause."

While the court's findings are not as complete as might be desired, they were stated into the record, and the finding was that appellant had waived the right to counsel. In Martinez v. State, Tex.Cr. App., 437 S.W.2d 842, this court stated:

"For the purposes of appellate review, it would be better practice for the court to enter written findings or to state into the record following such hearing his reasons for admitting such evidence, if he does."

See also Spencer v. State, Tex.Cr.App., 466 S.W.2d 749.

▮ We are confronted with the question of whether or not appellant intelligently, knowingly, and voluntarily waived his right to counsel. First, appellant interrupted the officer who was apprising him of his constitutional rights with the statement: "I know how that goes."

The Supreme Court of Nebraska, confronted with a similar situation as the one at bar, in State v. Perez, 182 Neb. 680, 157 N.W.2d 162,[2] stated:
"The basic question, under the Miranda holding, is whether the defendant, knowing his rights, voluntarily and intelligently waived them."

The defendant in Perez, supra, while being advised of his rights, stated: "You don't have to advise me of my rights, I know more about them than you."

The court stated further:

"Not only was the effect of his statement to refuse to be further advised, but

he expressly gave as the reason that he already knew them because he had been advised of them many times before."

In the case at bar, unlike Perez, supra, the officer continued to read to appellant his constitutional warnings until he finished. We hold he waived his right to counsel. See Johnson v. Zerbst, 304 U.S. 458, 469, 58 S.Ct. 1019, 82 L.Ed.2d 1461.

Secondly, appellant manifested no desire to contact a lawyer at the police station when he was repeatedly offered such opportunity.

Thirdly, the record reflects appellant's previous experiences with law enforcement authorities and lends credence to the proposition that he intelligently, knowingly and voluntarily waived his right to counsel. See Adams v. United States ex rel. McCann, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 2d 268; Johnson v. Zerbst, supra; Narro v. United States (5th Cir.) 1966, 370 F.2d 329, cert. denied, 1967; United States v. Hayes (4th Cir.) 385 F.2d 375.

In United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, the majority stated:

"Thus both Wade and his counsel should have been notified of the impending lineup, and counsel's presence should have been a requisite to conduct of the lineup, absent an 'intelligent waiver.' " .

We conclude that appellant's waiver of counsel was valid. However, appellant attacks, independently of any waiver of counsel, the pretrial identification, contending it to be grossly unfair, and a denial of due process of law. True, witness Flores made a mistaken identification when he first walked up to the automobile at the car wash, which he thereafter repudiated by identifying appellant upon his arrival at the police station. The record reflects the following testimony:

"Q.  *  *  *  Did you identify the policeman as being one of the robbers

2.  Cert. denied, 393 U.S. 886, 89 S.Ct. 200, 21 L.Ed.2d 163.

because he looked like one or because he was with Proctor?

"A. Because he was looking like one you see. Right away I recognize he wasn't.

"Q. Okay. Now, and then you saw Perryman again at the station house, police station? * * * This Defendant?

"A. No, I don't remember seeing him over there. I saw him over there when they brought him at the police station.

"Q. And the reason you remember him, you identified him in the courtroom today as being the man who robbed. Is it because you remember him from the robbery?

"A. Yes.

"Q. Okay. And there is no doubt in your mind?

"A. No, sir."

Evidence relating to the pre-trial identification at the police station is revealed by testimony of Officer William Jack Harlow, as follows:

"Q. (By the Prosecutor) Where were you and Flores?

"A. Flores—I got him a seat, he was sitting about the same distance as you and I. A little closer I guess and I was sitting behind the desk. I just came in and sat down.

"Q. Did you ask him if he recognized anyone?

"A. Well, I talked to him a second about robbery and another officer had come in and sort of interrupted and I asked him if they had any suspects, sort of asking the officer more than the complainant, 'at this time do they have any suspects?'

"I didn't know Mr. Thompson that well, Officer Thompson.[3] And the complainant then pointed to this man here and said he was one of them.

"Q. All right. Did you in any way suggest this Defendant to the complainant or the complaining witness?

"A. No. At that time I didn't know one from the other really.

"Q. Okay, sir. Now, was he definite in his identification?

"A. Yes, sir."

■ This identification having been made less than an hour and a half after the robbery, we conclude that the said pre-trial identification was not tainted. See United States v. Perry, D.C.Cir., 449 F.2d 1026.

■ Appellant further contends "the corroborating evidence that appellant was the guilty party was almost non-existent," and the "totality of the circumstances" standard spoken of in Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199, points to a deprivation of due process. Examining the "totality of the circumstances" in the case at bar, we find: (1) the police arriving at the scene of the robbery within ten minutes of the offense; (2) a plainclothes policeman answering the radio dispatch and observing two men fitting the description given dividing money, two blocks from the scene of the crime fifteen minutes after the offense; (3) the amount of money recovered from appellant and his companion matching the amount taken from Flores; (4) the flight of appellant's companion upon arrest, and; (5) the identification by Flores less than an hour and a half later.

Appellant's references to Palmer v. Peyton, 359 F.2d 199 (4th Cir., 1966) which was cited in Stovall v. Denno, supra, are misplaced, as Palmer dealt with the voice

3. Officer Thompson was in plain clothes and apparently resembled appellant.

identification of a suspected assailant by requiring him to enunciate words spoken during the assault, as his facial features were never seen by the complainant. The suspect was the only one used in this identification procedure, and such was held to be a deprivation of due process. However, in the case at bar, such circumstances of unfairness and unreliability are not present. As the court in Russell v. United States, 133 U.S.App.D.C. 77, 408 F.2d 1280 (1969) cert. denied, 395 U.S. 928, 89 S.Ct. 1786, 23 L.Ed.2d 245 stated:

"However, in post-Wade cases the excusable absence of counsel, while not dispositive, is among the 'totality of the circumstances' bearing on the due process question. And since this case also presents a single-suspect in-custody confrontation which may be suggestive, the court must carefully consider all possible evidence of actual unreliability in determining whether the requirements of due process have been met."

We have considered such evidence and find no deprivation of due process. See also State v. Hamblin, 448 S.W.2d 603 (Mo.), and authorities cited therein.

There being no reversible error, the judgment is affirmed.

ONION, Presiding Judge (concurring in part and dissenting in part).

This case involves a search for the natural boundaries of the decisions in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, which delineated the basic principle that a lineup is a critical stage of a criminal prosecution, and a denial of the right of counsel at a lineup renders the identification made at that time inadmissible.[1]

The question as here presented, as I view it, is whether the scope of these decisions is broad enough to encompass an on or near the scene or police station confrontation occurring within a reasonably short time after the alleged offense.

The majority appears to assume that Wade and Gilbert are applicable to the pretrial confrontation or confrontations here involved and concludes that the dictates of these decisions have been satisfied since there was an affirmative waiver of counsel.[2]

In this regard I disagree with the majority in two respects. First, for reasons which appear later, I do not agree that the Wade-Gilbert rules are applicable to an on or near the scene confrontation occurring within a reasonably short duration of time after the alleged offense. Second, even if Gilbert and Wade applied to the instant case, I cannot agree that the record supports a valid waiver of counsel.

Whatever constitutional rights were read to the appellant from a police card at the car wash shortly after his arrest do not appear in this record. No witness testified as to the nature of these warnings; the police card was not introduced into evidence nor was it read into the record. Cf. Gill v. State, 11 Md.App. 378, 274 A.2d 667 (1971). The record is thus silent as to whether the appellant was advised of his right to counsel, retained or appointed. Assuming that the card contained the Miranda warnings and the appellant, in light of his statement "I know how that goes," knew his Miranda rights as to in-custody interrogation, can it be said he knew of his right to counsel at any lineup or confrontation about to take place? Cf. Martin v.

---

1. These cases were given prospective effect only. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). They have no application to lineups, confrontations occurring before June 12, 1967.

2. It is observed, however, that at the conclusion of the majority opinion United States v. Perry, D.C.Cir., 449 F.2d 1026, is cited. Perry holds that Wade and Gilbert do not apply to an on the scene identification.

State, Tex.Cr.App., 449 S.W.2d 257 (trial court's findings).

There is no need to belabor this point for what concerns me is the lack of evidence to reflect an affirmative waiver of counsel.

In Carnley v. Cochran, 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70 (1962) the Court said:

"Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver." See also Glasser v. United States, 315 U.S. 60, 62 S. Ct. 457, 86 L.Ed. 680 (1942).

In Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, the Supreme Court noted that it had always set high standards of proof for the waiver of constitutional rights and that a heavy burden rests upon the prosecution to demonstrate that an appellant waived his right to retained or appointed counsel. See also McCandless v. State, Tex.Cr.App., 425 S. W.2d 636, 640.

This perhaps expresses the traditional rule that the waiver of constitutional rights will not be "lightly inferred," and the " 'courts indulge every reasonable presumption against [the] waiver' of fundamental constitutional rights." Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461. It appears that the "waiver" referred to may be defined as "an intentional relinquishment or abandonment of a known right or privilege." Johnson v. Zerbst, supra.

In finding an affirmative waiver the majority relies in part on appellant's alleged statement "I know how it goes" as to the warnings. The fact, however, that an individual knows his rights is not evidence, standing alone, that he intended to voluntarily relinquish and abandon those rights. And while appellant's previous experience

with law enforcement authorities may be taken into consideration with other factors in determining waiver, certainly it, standing alone, is insufficient to establish waiver. Finally, the majority relies upon the fact that the appellant manifested no desire to contact a lawyer at the police station when he was offered the opportunity.

The record is in dispute as to whether the complaining witness saw the appellant at the car wash, but it is undisputed that subsequently he identified the appellant at the police station some 30 minutes after the witness had arrived there. The officer on duty at the police station revealed that the appellant and his co-defendant were given opportunities after their arrival there to use the telephone "during this hour or hour and fifteen or twenty minutes that this took place." Whether these opportunities were before the station house identification does not appear in the record, although it does appear that the suspects, witnesses and arresting officers arrived at the police station at approximately the same time.

More important, it is well settled that where the assistance of counsel is a constitutional requisite, the right to counsel does not depend upon a request. Carnley v. Cochran, supra; Kitchens v. Smith, 401 U.S. 847, 91 S.Ct. 1089, 28 L.Ed.2d 519; Swenson v. Bosler, 386 U.S. 258, 87 S.Ct. 996, 18 L.Ed.2d 33. See also Ex parte Engle, Tex.Cr.App., 418 S.W.2d 671.

And in Miranda the Court noted:

"An individual need not make a pre-interrogation request for a lawyer. While such request affirmatively secures his right to have one, *his failure to ask for a lawyer does not constitute a waiver.* Nor effective waiver of the right to counsel during interrogation can be recognized unless specifically made after the warnings we here delineate have been given. * * *" (Emphasis supp.)

The fact that a man has had prior experience with law enforcement authorities,

knows how the warnings "go" and fails to request counsel does not add up to an affirmative waiver of counsel at a pre-trial lineup or confrontation even when the totality of circumstances is considered. See McCandless v. State, supra.

In this respect I dissent from the holding of the majority.

I concur in the result reached, however, because I am convinced that the Wade and Gilbert rationale was never intended to apply to confrontations such as the one in the case at bar.

Prior to trial the court conducted a hearing on the appellant's motion to suppress the in-court identification and the station house identification. See Article 28.01, Vernon's Ann.C.C.P. At such hearing Jose Flores testified he left Gilbert's Bar on Zarzamora Street in San Antonio about 7:45 or 8 p. m. on May 16, 1969, and walked to his pickup truck parked nearby. As he commenced to start his vehicle he observed two men approaching him. They pulled him from the vehicle, one of the men held him while the other ripped his pants pocket, taking his wallet containing approximately $71.00. They then fled. Flores returned to the bar and the police were called. Later he was taken to a car wash several blocks away where he identified Luther Proctor as one of his assailants and shortly thereafter he related he identified the appellant Perryman at the police station as his other assailant. Flores acknowledged that when he approached the police car at the car wash and identified Proctor he mistakenly identified Officer Thompson (who was dressed in civilian clothes) as the other assailant. He admitted he later realized his mistake. He did not recall seeing Perryman at the car wash.

Officer Thompson testified that while dressed in mufti he had heard the police broadcast concerning the robbery and proceeded in his own car to the area. Twelve or fifteen minutes after the broadcast he observed the appellant and Proctor standing in front of a liquor store dividing some money approximately two blocks from the scene of the robbery. They matched the physical description given and wore the described clothing. He was also acquainted with them, knowing they were unemployed and did not seek employment. Thompson took them into custody although Proctor fled upon the approach of a police vehicle. He was quickly apprehended and both suspects were taken to a car wash at Zarzamora and Culebra Streets to avoid the crowd that was beginning to gather at the scene of the arrest. Officer Thompson testified he was mistakenly identified by Flores as one of the robbers while he was seated in a police car with Proctor, and that he later showed Flores his police identification. He recalled that the appellant was in another police car at the car wash, but he could not remember that Flores had seen him.

Detective Harlow testified that on the night in question he was working on a burglary case when he was asked to assist the robbery detail. He directed the uniformed officers to bring all witnesses and suspects to the police station. He entered the robbery office unaware of any of the details of the offense and found several persons. After a brief conversation he determined only that Flores was the complaining witness. At this juncture another officer walked into the room and Harlow inquired of him if there were any suspects. Before the officer could answer Flores spontaneously pointed to the appellant who was in the same room and positively identified him as one of his assailants. It appears Proctor was in another room at the time. This station house identification occurred within approximately an hour and a half after the offense.

Appellant did not testify or make any claim that there was any other pre-trial identification which would taint the in-court identification.

The motion to suppress was overruled, the court finding that the pre-trial identifi-

cation was not a lineup "as we know it in Gilbert and Wade and Martinez" [3] and that the in-court identification was of independent origin. Thereafter the appellant waived trial by jury and entered a plea of not guilty before the court which had passed upon the motion to suppress.

At the trial Flores and Officers Thompson and Harlow substantially repeated their earlier testimony. Flores made a positive in-court identification, stating that he had a good opportunity to see the appellant's face at the time of the robbery and that the lighting conditions were such as to permit adequate observation of appellant's features.[4] Thereafter in support of his in-court identification the State elicited without objection from Flores the fact that he had also made a station house identification.

Thompson again stated he could not recall whether Flores had seen the appellant earlier at the car wash. On re-direct examination he was handed his police report in which he agreed it was stated that Flores had indeed seen the appellant Perryman and "When Larry Perryman was brought to the car where complainant was, he stated that Perryman also looked like the other person that robbed him." The witness acknowledged though that the report did not refresh his memory.

Officer Tefteller related that an investigation showed that Proctor had $31.00 on his person and the appellant had $40.00 on his person at the time of the arrest.

Testifying on his own behalf, the 21 year old appellant, who had previously been convicted of a felony, denied the offense charged and claimed an alibi. He stated he had been shooting dice with money borrowed from a girlfriend and won $40.-00; that at the car wash after his arrest he had been exhibited to Flores who de-

clared "I don't know who robbed me, all you black people look alike." The appellant claimed the only time he saw Flores at the police station was when they brought him out of the robbery office to book him he observed Flores standing up.

After such testimony was elicited there was no motion to strike nor any other relief requested as to the testimony already in evidence as to the in-court identification or the station house confrontation.

Do these facts invoke the mandate of Gilbert and Wade?

Both Gilbert and Wade involved post-indictment lineups in cases where counsel had already been appointed for the accused. In these cases the court found that at least in such situations the risks of suggestibility in the lineup procedure and the inability of the accused to reconstruct the events for the purpose of cross-examination at trial rendered the lineup identification a critical stage of the prosecution demanding the presence of counsel. At no point did the court indicate the holdings were limited to post-indictment lineups. In fact, the court indicated it would be required to "scrutinize any pretrial confrontation" to determine if it was a critical stage of the proceedings. 388 U.S. at 227, 87 S.Ct. 1967. It appears that Wade and Gilbert were fashioned "to deter law enforcement authorities from exhibiting an accused to witnesses before trial for identification purposes without notice to and in the absence of counsel." Stovall v. Denno, 388 U.S. at p. 297, 87 S.Ct. at 1970. The sweep of the language appears to be all encompassing and would seem to be limited only by the court's implied concession that "although no countervailing policy considerations had been advanced against the requirement of counsel in these cases, some might be advanced in future situations.

---

3. Martinez v. State, Tex.Cr.App., 437 S.W.2d 842.

4. The only objection to the in-court identification was that it was tainted by the

"police station identification" held in absence of counsel and in absence of an intelligent waiver of the same.

It is thus not easy to determine the full scope of these holdings for it has been written that:

" 'The metes and bounds of the Wade decision * * * are not readily ascertainable,' Commonwealth v. Cooper, 356 Mass. 74, 248 N.E.2d 253, and one source of the problems in this respect is that the 'expressions in the opinions in these cases [Wade and Gilbert] * * * outrun their facts.' United States v. Davis, 2 Cir., 399 F.2d 948. One of the vaguest areas is whether the opportunity for the presence of counsel is required at all confrontations, as the 'far ranging discussion' (Commonwealth v. Cooper, supra) in the Wade case may be considered to imply." State v. Hamblin, 448 S.W.2d 603, 608 (Mo.).

And since such time the Supreme Court has not clarified its position so as to clearly delineate the outer boundaries of its holdings.

Some jurisdictions have narrowly construed Wade and Gilbert and would limit the decisions to post-indictment lineups. State v. Walters, 457 S.W.2d 817 (Mo., 1970); People v. Palmer, 41 Ill.2d 571, 244 N.E.2d 173; People v. Green, 118 Ill.App. 2d 36, 254 N.E.2d 663; State v. Thomas, 107 N.J.Super. 128, 257 A.2d 377; State v. Fields, 104 Ariz. 486, 455 P.2d 964; Hayes v. State, 46 Wis.2d 93, 175 N.W.2d 625; Perkins v. State, 228 So.2d 382 (Fla.); Gaitan v. State, Mo., 464 S.W.2d 33, 35; State v. Borchert, 479 P.2d 454 (Mont.). See also Comment, "The Right to Counsel During Pretrial Identification Proceedings —An Examination," 47 Neb.L.Rev. 740, 747 (1968); 9 Wm. & Mary L.Rev. 528, 533 (1967).

The contrary and majority view is perhaps best represented by In Re Holley, 268 A.2d 723 (R.I.); People v. Fowler, 1 Cal. 3d 335, 82 Cal.Rptr. 363, 461 P.2d 643, 650; United States v. Roth, 430 F.2d 1137 (2nd Cir.). See also 51 Marq.L.Rev. 191, 194 (1968). Certainly determining the scope of the right to counsel by an application of

the simple pre/post indictment dichotomy would render decision making by the courts far easier, but would leave the door open to the possibility that the true aim of the Wade and Gilbert rulings could be easily defeated by conducting all pretrial identification proceedings prior to indictment.

Without passing upon the full scope of the Wade-Gilbert rationale, this court has recognized that the rationale has application to pre-indictment as well as post-indictment lineups, showups, etc. See, i. e., Martinez v. State, Tex.Cr.App., 437 S.W. 2d 842; Evans v. State, Tex.Cr.App., 444 S.W.2d 641; Lucas v. State, Tex.Cr.App., 444 S.W.2d 638; Evans v. State, Tex.Cr. App., 445 S.W.2d 180; Martin v. State, Tex.Cr.App., 449 S.W.2d 257; Herring v. State, Tex.Cr.App., 440 S.W.2d 649; Jones v. State, Tex.Cr.App., 458 S.W.2d 62.

In groping for the outer limits of the Wade and Gilbert right to counsel rule, the issue of the on the scene confrontation and identification inevitably arises.

The first case to pass on the factual situation similar to that of the case at bar in determining the application of Gilbert and Wade rules was Commonwealth v. Bumpus, 354 Mass. 494, 238 N.E.2d 343. There the eye witness feigned sleep while a burglar prowled his bedroom and immediately afterward called the police. The accused was apprehended in the neighborhood and returned to the scene for identification by the witness without the opportunity of the accused to have counsel present. In Bumpus the Court said:

"Reasonable confrontations of this type, in the course of (or immediately following) a criminal episode, seem to us to be wholly different from post-indictment confrontations (such as those in the Wade and Gilbert cases) in serious crimes after a significant interval of time, and in absence of already appointed counsel. The Supreme Court of the United States has not applied the principle of the Wade and Gilbert cases in such circumstances. * * * This is an

area where proper police protection of the public may be greatly embarrassed by rigid rules restricting intelligent, fair police action. Such action must be appraised with commonsense appreciation of the problems which confront policemen patrolling a residential area." Certiorari was denied. 393 U.S. 1034, 89 S.Ct. 651, 21 L.Ed.2d. 579 and rehearing denied, 393 U.S. 1112, 89 S.Ct. 888, 21 L.Ed.2d 814.

While unquestionably suggestibility is involved in the presentation of one suspect in custody to the victim of a crime or a witness, even when proximate to the scene and time of the offense, which would appear to tip the scales in favor of an extension of Wade and Gilbert to such situations, Bumpus strikes a balance by calling attention to the need for a commonsense appreciation of the problems that daily confront the police.

Relying upon Bumpus the same result was reached in United States v. Davis, 399 F.2d 948 (2nd Cir.), cert. den., 393 U.S. 987, 89 S.Ct. 465, 21 L.Ed.2d 449.

And in State v. Boens, 8 Ariz.App. 110, 113, 443 P.2d 925, 928 (1968), the court wrote:

"If such confrontations as this (fifteen minutes after offense at the scene of the crime) violate our Constitution because they are 'suggestive,' then much of the evidentiary material which forms the grist of the fact-finding machinery in our courts should as well be constitutionally banned for unreliability. * *"

In Russell v. United States, 133 U.S. App.D.C. 77, 408 F.2d 1280, a witness called the police after he saw a person emerge from a store where he had earlier heard the sound of breaking glass. The accused was apprehended in the neighborhood and returned to the scene of the crime where he was identified by the witness without opportunity for counsel to be present. The witness made an in-court identification and a police officer testified as to the out of court identification.

After referring to the decision in Rivers v. United States, 5th Cir., 400 F.2d 935, holding the rule in the Wade case applied to all types of confrontations "regardless of when the identification occurs, in time or place * * *." [5] and the decision in United States v. Kinnard, D.C., 294 F. Supp. 286, excluding an on the scene identification occurring forty-five minutes after a robbery, the Court said:

"While the language of Wade would thus seem to encompass prompt on-the-scene identifications, they do not fall within the holdings of Wade or its companion case, Gilbert v. California. The confrontations disapproved in these cases were post-indictment lineups. Similarly, though it spoke in broad terms, the [Supreme] Court was evidently focusing primarily on the routine lineup and show-up procedures employed by the police to obtain evidence for use at trial. The Court was concerned both to enhance the fairness of such procedures and to expose to judge and jury any elements of unfairness or unreliability which might attend them. In these typical cases, where counsel had been retained and time was not a factor it could find 'no substantial countervailing policy considerations * * * against the requirement of the presence of counsel.'" 408 F.2d at 1283.

The circuit court then decided that Wade does not apply to a prompt confrontation with an eye witness at the scene of the crime, and found that the dangers of suggestibility inherent in confrontations of

---

5. In State v. Hamblin, Mo., 448 S.W. 2d 603, it was noted that the language in Rivers was "sufficiently broad to include the face-to-face encounter between the felon and his victim at the time of the commission of the crime" so as to require counsel. Although Rivers is a Fifth Circuit case, this court is not bound by the decisions of lower federal courts on federal constitutional questions. Pruett v. State, Tex.Cr.App., 463 S.W. 2d 191, 194.

the witness with a single suspect were outweighed by the problems of delay in the identification proceedings undertaken with counsel present, of possible overnight detention of innocent individuals, and of the possible interruption of the search for the real criminal.

The Court concluded that:

"It appears that prompt confrontations in circumstances like those of this case will 'if anything promote fairness, by assuring reliability * * *.' This probability, together with the desirability of expeditious release of the innocent suspects, presents 'substantial countervailing policy considerations' which we are reluctant to assume the Supreme Court would reject."

It was then held that the "Wade and Gilbert rules" did not require the exclusion of the testimony of either the out-of-court or in-court identification of the accused by the eye witness or the police officer.

Although the court expressly noted that the result reached was in sharp conflict with the Rivers opinion by the Fifth Circuit, certiorari was denied by the Supreme Court. 395 U.S. 928, 89 S.Ct. 1786, 23 L. Ed.2d 245. See also Solomon v. United States, 133 U.S.App.D.C. 103, 408 F.2d 1306; Ester v. United States, D.C.C.A., 253 A.2d 537; "Right to Counsel at Scene of the Crime Identifications," 117 University of Pennsylvania Law Review 916.

In Bates v. United States, 132 U.S.App. D.C. 36, 405 F.2d 1104 (1968), the court, in an opinion by the now Chief Justice Burger, rejected the claim that the patrol-wagon identification was "unnecessarily suggestive" under Stovall. The court stated that "[t]here is no prohibition against a viewing of a suspect alone in what is called a 'one-man showup' when this occurs near the time of the alleged criminal act." 405 F.2d at 1106.

The Court further added that "[t]he police action in returning the suspect to the vicinity of the crime for immediate identification in circumstances such as these fosters the desirable objectives of fresh, accurate identification which in some instances may lead to the immediate release of an innocent suspect and at the same time enable the police to resume the search for the fleeing culprit while the trail is fresh. * * *" 405 F.2d at 1106.

In McPhearson v. State, 253 N.E.2d 226 (Ind.), the court held that a criminal suspect is entitled to be represented by counsel at a pretrial confrontation unless facts and circumstances indicate that other interests of the suspect as well as those of society as represented by law enforcement officials outweigh the interest of the suspect in being represented by counsel at that time. Citing Bumpus and Russell with approval, the Indiana court stated that "[o]ne such situation that we are recognizing today is where the suspect is returned to the scene of the crime immediately upon apprehension and where such apprehension occurs within a reasonably short time after the commission of the alleged offense." See also Lewis v. State, 250 N.E.2d 358 (Ind., 1959); Parker v. State, 261 N.E.2d 562 (Ind.).

Although the United States Supreme Court has not yet clarified the meaning of its holdings in Wade, Gilbert and Stovall, the vast majority of state and federal courts which have considered the question have rejected the proposition that the Wade-Gilbert-Stovall trilogy requires the presence of counsel at every witness-suspect confrontation or prohibits any single suspect identification. See Martin v. Commonwealth of Virginia, 173 S.E.2d 794; State v. Smith, 182 N.W.2d 409 (Iowa) and cases there cited; State v. Schaffer, 182 N.W.2d 413 (Iowa); State v. DiMaggio, 49 Wis.2d 565, 182 N.W.2d 466; Johnson v. State, 176 N.W.2d 332 (Wisc.); State v. Singleton, 253 La. 18, 215 So.2d 838; State v. Bertha, 4 N.C.App. 22, 167 S.E.2d 33; State v. Hamblin, 448 S.W.2d 603 (Mo.); Jones v. State, 255 N.E.2d 219 (Ind.); State v. Satterfield, 103 N.J.Super. 291, 247 A.2d 144. This has been true

even though the confrontation occurred at the police station, State v. Hill, 419 S.W.2d 46 (Mo.); People v. Durant, 105 Ill.App.2d 216, 245 N.E.2d 41; State v. Carnegie, 158 Conn. 264, 259 A.2d 628; State v. Murphy, 10 N.C.App. 11, 177 S.E.2d 917 (1970); State v. Bibbs, 461 S.W.2d 755 (Mo., 1970); State v. Townes, 461 S.W.2d 761 (Mo., 1970), or hospital, State v. Hamblin, supra; State v. Dutton, 112 N.J.Super. 402, 271 A.2d 593 (1970).

And this court has in the past refused to extend the Wade and Gilbert decisions to situations similar to the facts in this appeal. See, i. e., Watkins v. State, Tex.Cr. App., 452 S.W.2d 444; Elliott v. State, Tex.Cr.App., 444 S.W.2d 914 (confrontation at police station). Cf. Lee v. State, Tex.Cr.App., 459 S.W.2d 851.

I would, therefore, conclude that the Wade-Gilbert holdings are not applicable to an on or near the scene confrontation between a suspect and a witness occurring shortly after the commission of a crime or in other circumstances which necessitate a prompt identification, there being some reasonable elasticity as to time and place. United States v. Perry, D.C.Cir., 449 F.2d 1026.

Putting aside the right to counsel factor and turning now to the question of whether due process was violated by the manner in which the confrontations in the case at bar were conducted, considering the totality of the circumstances, Stovall v. Denno, supra, it is noted that identification procedure whereby suspects are viewed singly by a witness rather than as part of a lineup has been widely condemned, Stovall v. Denno, supra, 388 U.S. at p. 302, 87 S.Ct. 1967. Due process is not, however, invariably violated by such a procedure. See Biggers v. Tennessee, 390 U.S. 404, 408, 88 S.Ct. 979, 19 L.Ed.2d 1267; United States ex rel. Springle v. Follette, 435 F.2d 1380 (2nd Cir., 1970). Nor does due process require that every pretrial identification "be conducted under laboratory conditions of an approved lineup." United States v.

Davis, 407 F.2d 846, 847 (4th Cir., 1969). Rather, each case must be considered on its own facts to determine the likelihood that a particular pretrial confrontation resulted in irreparable misidentification. Simmons v. United States, 390 U.S. 377, 384, 88 S. Ct. 967, 19 L.Ed.2d 1247.

Considering appellant's claim in accordance with Stovall and Simmons, I cannot conclude that the procedure by which the appellant Perryman was identified, viewed in light of the totality of the circumstances surrounding it, was so unduly prejudiced as to fatally taint his conviction.

As noted, Flores had a clear view of his assailants and was able to describe them in several particulars. Based upon this description the appellant and Proctor were apprehended two blocks from the robbery scene with the exact amount of money claimed to have been taken. The short interval between the occurrence of the crime and "identification," if any, at the car wash and subsequent and apparent inadvertent confrontation at the police station was not conducive to misidentification but tended rather to insure a fresh, accurate identification. Terry v. Peyton, 433 F.2d 1016 (4th Cir., 1970); State v. Dutton, 112 N.J.Super. 402, 271 A.2d 593 (1970).

The only concern I have is the apparent dispute in the testimony. Flores testified he did not see and identify the appellant until they both were at the police station. Officer Thompson could not recall that Flores had seen the appellant at the car wash, and his written report to the effect that Flores at the car wash had said appellant looked like one of the robbers did not refresh his memory. The appellant alone claimed he had been exhibited to Flores at the car wash and Flores could not identify him. The record is thus not clear as to just what transpired at the car wash, although there is nothing to indicate that the police used suggestiveness or indicated to Flores they had the actual robbers. Since it is undisputed that Flores had misidentified Officer Thompson as one of the rob-

bers it would have been better police practice to avoid any subsequent confrontation at the police station and conduct a formal lineup. However, the confrontation at the police station appears to have been inadvertent or not arranged by design. While one on one confrontations are not to be approved as a general rule, I cannot say that circumstances surrounding the identification of the appellant the night of the robbery considered in their totality were so unnecessarily suggestive and conducive to irreparable misidentification as to amount to a denial of due process or to be grossly unfair to the appellant.

The pretrial identification was not excludable in light of Wade and Gilbert, nor entailed due process violations and the in-court identification, being of independent origin, was admissible and untainted by the pretrial identifications.

For the reasons stated, I concur in the affirmance of this judgment.