**Henry JACKSON, Appellant,**

v.

**STATE of Texas, Appellee.**

No. 2038cr.
13–81–051–CR.

Court of Appeals of Texas,
Corpus Christi.

Sept. 23, 1982.

Discretionary Review Granted
Jan. 12, 1983.

William Morrow, Brownsville, for appellant.

Reynaldo Cantu, Jr., Criminal Dist. Atty., Brownsville, for appellee.

Before UTTER, KENNEDY and GONZALEZ, JJ.

## OPINION

UTTER, Justice.

This is an appeal from a conviction for theft of a motorcycle valued at more than $200 but less than $10,000. Punishment was assessed by the jury at five years confinement in the Texas Department of Corrections. We reverse and remand.

On March 16, 1979 a black male presented himself at the residence of eighty-year-old Mrs. Dolores T. Besteiro in Brownsville, Texas to inquire about a motorcycle offered for sale by her grandson. Also present was Joana Besteiro, the thirteen-year-old granddaughter of Mrs. Besteiro.

According to the trial testimony, the black man spoke to Mrs. Besteiro and Joana

for about an hour, after which he requested permission to use the motorcycle. Mrs. Besteiro recalled that he took the motorcycle under the pretense of going to a nearby hamburger stand; Joana thought he was simply going for a test ride around the block. Both testified that the motorcycle was not returned. Shortly thereafter, Mrs. Besteiro notified the Brownsville Police Department by telephone that the motorcycle was stolen. Officer Victor Rodriguez, who responded to the call, testified that the suspect was described to him as a black person, six feet tall, weighing 175 pounds, and wearing a brown shirt and short afro haircut. Joana testified that she gave the following description: "[T]all, slender, black, a short afro, black pants and a white shirt." At the trial, when Mrs. Besteiro was asked if she had given a description, she replied:

A: The only thing I told them was that we had been talking for about an hour and he told me he was married and had two children.

Q: And he was a Negro?

A: Yes.

The appellant, a black United States citizen, was arrested by a customs official on the afternoon of March 19, 1979 while attempting to enter the United States. Custody of the appellant was transferred to the Brownsville Police Department, which telephoned Mrs. Besteiro and requested her presence at the police station. Mrs. Besteiro stated that she was not told why she was wanted at the police station. Detective Sergeant Pat Ochoa at first stated that he did not tell Mrs. Besteiro why her presence was desired; later, he admitted that he told her over the telephone that they had a suspect. The appellant stated at trial that, while being held for questioning, he heard a police officer tell someone "we have a suspect down here we would like you to come in and identify". In any event, a police officer in a patrol car was dispatched to pick up Mrs. Besteiro and Joana, who were driven to the police station parking lot, from where Officer Ochoa directed them to the room where the appellant was held. A non-black police officer, Lieutenant Sauceda, was the only other person in the room.

There was no lineup, nor was there a photographic showup.

Mrs. Besteiro, upon seeing the appellant, identified him as the man who had taken the motorcycle on the previous Friday afternoon. The appellant was indicted for theft and unauthorized use of the motorcycle. Mrs. Besteiro subsequently admitted that she had not seen a single other black person in the days between the disappearance of the motorcycle and the identification in the police station.

Approximately two weeks before any trial court hearings were held on the appellant's behalf, he was taken into a courtroom where Mrs. Besteiro had another opportunity to observe him. Once again there were no other black people present.

In a hearing prior to trial on the merits, the appellant's motion to suppress the out-of-court identification was denied. Trial was held before a jury which found the appellant guilty of theft, from which verdict he has perfected an appeal to this Court.

In his first ground of error the appellant argues that the trial court erred by (1) overruling his Motion to Suppress Evidence of Witness Identification, referring to the out-of-court identification made by Mrs. Besteiro and Joana and, (2) by thereafter admitting into evidence the in-court identification of the appellant made by Mrs. Besteiro and Joana, because of taint resulting from the improperly conducted one-man showup at the Brownsville Police Station.

■ The state urges that the appellant's failure to object at trial to the in-court identification waived any defects associated with impermissible or suggestive out-of-court identifications. However, once a motion to suppress an identification has been filed and ruled upon, no subsequent objection at trial is necessary to preserve error. *Waller v. State,* 581 S.W.2d 483 (Tex.Cr. App.1979). Thus, the denial of the appellant's motion to suppress properly preserved the ground for review.

Even though one-to-one showups have been widely condemned, they are not of such a nature that due process is invariably violated by the procedure. *Cole v. State*, 474 S.W.2d 696 (Tex.Cr.App.1971). It must be determined from a totality of the circumstances whether there has been a deprivation of due process. *Perryman v. State*, 470 S.W.2d 703 (Tex.Cr.App.1971). Each case must be decided on its own facts in determining the likelihood of whether a particular pre-trial confrontation resulted in a chance of irreparable misidentification. *Sutton v. State*, 495 S.W.2d 912 (Tex.Cr. App.1973); *Cole v. State, supra*. If there is no clear and convincing proof that the identification is of independent origin and the totality of the circumstances are such that the pre-trial identification is so unnecessarily suggestive and conducive to irreparable mistaken identification as to amount to a denial of due process, the conviction must be reversed and the cause remanded. *Proctor v. State*, 465 S.W.2d 759 (Tex.Cr.App. 1971).

Identification of this appellant clearly was tainted by pre-trial confrontation. The police telephoned Mrs. Besteiro, told her that they wanted her to examine a suspect, drove her and Joana to the police station, and presented the appellant for identification in a room otherwise occupied only by the non-black police lieutenant. Mrs. Besteiro testified that her conversation over the motorcycle was the first close confrontation she had ever had with a black person. The paucity of black people in Brownsville is illustrated by questions asked of a prosecution witness during the hearing on the motion to suppress the out-of-court identification.

Q: (Prosecutor): Do you know—how many people are usually in a lineup?

A: Usually about six of them.

Q: Do you know whether you could have gotten six black men on March 19 to appear in the lineup?

A: No sir, not in Brownsville.[1]

\*   \*   \*   \*   \*   \*

Q: (Defense Counsel): Black people are pretty scarce down here, aren't they, sir?

A: Yeah.

Defense counsel went to the Besteiro residence on the day before trial with ten photographs of black males. Joana Besteiro stated that she could not identify any of the photographs. Mrs. Besteiro identified six of the photographs as being of the person who drove away on the motorcycle. In fact, only one of these pictures was of the appellant; of the remaining five, two were of a material witness held in Cameron County Jail in conjunction with another case, two were of Nigerian foreign exchange students, and one was of a Department of Public Safety Trooper. Four photographs were identified as not being of the man who drove away. Of these, one was of the same material witness, one was of another Department of Public Safety patrolman, one was of that patrolman's brother, and the last was another photograph of the appellant.

Mrs. Besteiro also testified on numerous occasions at trial that she was not attentive to the appearance of the man who drove away on the motorcycle:

Q: And some tee shirts have a round neck and some come down to a "v". Did this have a round neck or a "v" that he was wearing?

A: Well, I couldn't tell you because I really didn't pay much attention to the kind of clothes he was wearing because I didn't know we would arise to this point.

\*   \*   \*   \*   \*   \*

Q: What color pants was he wearing?

A: I don't really know. It was a dark color. Whether it was black or brown, I really don't know. I did not expect to come to this, so I didn't pay attention.

Q: Do you remember if they were jeans or trousers?

---

1. Appellant's counsel later demonstrated that adequate black representation in a line-up or photographic showup could have been arranged had the arresting officers chosen to do so.

A: I don't remember very well, but I don't think they were blue jeans.

Q: Can you remember anything else about him to distinguish him, other than his being a Negro?

A: No.

■ That the witnesses relied heavily on the suggestive atmosphere of the out-of-court identification proceedings is demonstrated by Mrs. Besteiro's testimony that, after being chauffeured to the Brownsville police station to view a black person, she thought "this must be the man". The trial testimony of Mrs. Besteiro and Joana did not establish that their in-court identification of the appellant resulted from any independent recollection as required by *Proctor v. State, supra,* and *Turner v. State,* 614 S.W.2d 144 (Tex.Cr.App.1981).

Judgment of the trial court is REVERSED and the cause is REMANDED.

GONZALEZ, Justice, dissenting.

I dissent. From the totality of the circumstances, I am of the opinion that the pre-trial identification was not unnecessarily suggestive and conducive to irreparable mistaken identification.

Two eyewitnesses had an excellent opportunity for over an hour to observe appellant during daylight hours. Among other things, appellant told the eyewitnesses that he was married, that he had two children and that he used to live in California. When appellant took the stand he acknowledged that he was married, that he had two children and testified that he had been in prison in California.

Also, the description given the police at the time they were called to investigate the case matches appellant's description. Upon seeing appellant at the police station the witnesses immediately recognized appellant as the person who took the motorcycle. Also, the first in-court confrontation was inadvertent. The witnesses were in court because they had been notified to be there for trial. The case was not tried on that day because appellant's motion for a continuance was granted. The fact that there were no other blacks in court or at the police station in and of itself is of no consequence. Blacks like whites, come in all sizes, shapes and hues and there is nothing more in the record to show that these two pre-trial identifications were suggestive.

Regarding the photo layout a day prior to trial, the jury heard the evidence. They examined the photographs and heard Mrs. Besteiro's explanation that the pictures were not very clear. The jury was satisfied of this explanation and concluded beyond reasonable doubt that appellant was the person who had stolen the motorcycle.

It appears that the in-court identification was based upon the observations at the home and not the observations elsewhere. Therefore, I would affirm. See, *Benson v. State,* 487 S.W.2d 117 (Tex.Cr.App.1972).